## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

### WILEY RICHARDSON V. COMMONWEALTH.

#### September 18, 1924.

1. ASSAULT AND BATTERY—*Self-Defense—Evidence Sufficient to Support Verdict of Guilty.*—On a prosecution for homicide accused was found guilty of assault and battery. The killing resulted from a mutual combat in which deceased was the aggressor. The testimony for the Commonwealth was sufficient to warrant the jury in finding that the accused at the time he fired the fatal shot was successfully defending himself from any serious bodily harm by the use of his hands, without use of any weapon; and that, under the circumstances as they should reasonably have appeared to the accused, he had no need for the use of any weapon, and hence was not justified in the resort to the shooting in order to defend himself.

   *Held:* That there was sufficient evidence to support the verdict.

2. HOMICIDE—*Instructions—Intimation that Jury must find Accused Guilty of some Offense—Enumeration of Degrees of the Offense with their Punishments not such an Intimation.*—In the instant case, a prosecution for homicide, upon the jury announcing that they were unable to agree, the court verbally instructed the jury that it was important for them to agree and continued that the jury might find the accused guilty of voluntary manslaughter or of involuntary manslaughter and enumerated the punishments they might fix in either case. To this accused excepted but assigned no ground for such exception. The question of whether the jury should or should not find the accused guilty of any offense whatever was fully covered by written instructions.

   *Held:* That the jury could not have been misled into regarding the oral instruction as tantamount to an expression of the opinion of the court that accused was guilty of some offense.

Error to a judgment of the Circuit Court of Russell county.

*Affirmed.*

This is the second appeal of this case. The facts shown in evidence upon the former trial and the de-

cision of the appellate court on the former appeal appear from the report of the case as *Richardson* v. *Commonwealth*, 128 Va. 691, 104 S. E. 788.

On the former trial the accused was convicted of murder in the second degree, and the verdict and judgment thereon were set aside and reversed on the appeal, on the ground that there was no evidence to support the verdict in finding the existence of the ingredient of malice essential to constitute murder in the second degree. The opinion expressly states that it left undecided whether the evidence on the first trial showed that the killing was done in self-defense.

On the retrial, there was a verdict finding the accused guilty merely of an assault and battery, and fixing his punishment at twelve months confinement in jail; and the judgment under review was entered accordingly.

The evidence upon the former trial and that upon the retrial now under review was, in general, to the same effect, and presented to the jury the same general facts. These general facts, therefore, will not be restated, as they appear from the opinion of the court on the former trial, already reported as aforesaid, except the following: On that trial, the evidence for the Commonwealth showed, as stated in the aforesaid opinion, that the whole of the combat, from the beginning to the ending of it with the shot which killed the deceased, occurred as follows:

"The deceased * * seized the accused by the throat, struck the accused in the face with his fist, pulled the accused over down into the seat, had him by the throat, and was 'up over him;' and while the accused was being thus choked, he got a pistol out of his pocket and shot the deceased, causing his subsequent death."

On the retrial, now under review, while the testimony of and for the accused in some respects was somewhat more favorable to him than it was on the former trial, there was this material difference in the testimony for the Commonwealth from the testimony for the Commonwealth on the former trial, namely: Such testimony on the retrial tended to show that, after the accused received the provocation of being seized by the throat by the deceased, there was a more prolonged combat between the two than appeared from the aforesaid testimony on the first trial, and the hand to hand struggle was made to appear on the second trial as having been waged on equal terms and with equal fortune, with no serious bodily injury to the accused impending, and it tended to show that the accused was not justified, in the situation as it might have reasonably appeared to him, in resorting to the shooting in order to defend himself from any serious bodily harm.

The testimony of one of the witnesses for the Commonwealth on the retrial (to quote no further from such testimony), was as follows:

"I looked around and they commenced choking one another   *   *   *; the last time I looked around I seen they were fighting."

Further, she testified:

"When I looked around the last time they were choking one another."

"Q.   How were they sitting?

"A.   Side by side.

"Q.   Richardson had hold of Grubb; Grubb had hold of Richardson; they had hold of each other?

"A.   Yes, sir."

Yet further, she testified:

"They were sitting facing one another, choking, and

they had hold of each other, grabbing with one another."

Still further, she testified as follows on cross-examination:

"Q. When you said they were both choking each other, were they both choking each other or was—

"A. I looked back and they were both bent over; both looked like they were choking each other.

"Q. Bent over in the seat of the car?

"A. Yes, sir; face to face."

And after repeating this statement she testified as follows:

"That, though she could not state how long the fight lasted, she guessed it was about five minutes."

After the evidence was all in the court gave a number of instructions, three at the request of the Commonwealth, to which the accused made no objection, and four at the request of the accused (being all of the instructions asked for at any time in behalf of the accused); and among the latter were the following instructions, namely:

"The court instructs the jury that if they have any reasonable doubt under the evidence in this case as to whether or not the defendant, Wiley Richardson, in shooting the deceased, Lon Grubb, acted under a reasonable apprehension of death or serious bodily harm at the hands of the said Lon Grubb, they will find him not guilty.

"The court instructs the jury that if they believe from the evidence in this case that the said Lon Grubb assaulted the defendant, Wiley Richardson, in the night time, and had the said Richardson by the throat, choking him, and that the said defendant shot the said Grubb from a reasonable apprehension of death or serious bodily harm at the hands of the said Lon Grubb,

that then he was justified in said shooting and the jury should find him not guilty."

Thereupon the jury retired to their room to consider of their verdict and after some time returned into court and announced that they were unable to agree. Whereupon the court verbally instructed the jury as follows:

"Gentlemen of the jury, it is important from the standpoint of the Commonwealth and of the defendant that you agree if you can without doing violence to your conscience.

"This was not argued to you, but I will say to you that you have a broad latitude; that you may find him guilty of voluntary manslaughter and fix his punishment at from one to five years; or you can find him guilty of involuntary manslaughter and fix his punishment at from one to five years, or by fine not to exceed $1,000.00, or imprisonment in jail not to exceed twelve months, or you can fine him and leave the jail sentence off, or you can give him a jail sentence and leave the fine off, just as you like. Go back to your room and see if you cannot agree."

To this verbal instruction the accused, by counsel, excepted, but assigned no ground for such exception, and made no request of the court for any further instruction to the jury.

Subsequently, the jury returned the verdict above referred to, which was as follows:

"We, the jury, find the defendant guilty of assault and battery and fix his punishment at twelve months in the county jail."

There are only two assignments of error, which are, in substance, as follows:

(1) That the court erred in giving the verbal instruction above set forth; and

(2) That the court erred in refusing to set aside the verdict as contrary to the law and the evidence, for the reason that there was no evidence to support any finding of the jury other than that the accused was justified in shooting in self-defense.

*W. B. Snidow*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General*, and *Lewis H. Machen, Assistant Attorney-General*, for the Commonwealth.

Sims, P., after making the foregoing statement, delivered the following opinion of the court:

The questions raised by the assignments of error will be disposed of in their order as stated below.

[1] 1. Was there sufficient evidence on the trial now under review to support the verdict in finding the accused guilty of assault and battery?

The question must be answered in the affirmative.

That this conclusion must be reached is apparent from a mere reading of the material testimony, the substance of which is set out above, and hence need not be repeated here. It is plain that the testimony for the Commonwealth on the trial under review was sufficient to warrant the jury in finding that the accused, at the time he fired the shot which killed the deceased, was successfully defending himself from any serious bodily harm by the use of his hands, without the use of any weapon; and that, under the circumstances as they should reasonably have appeared to the accused, he had no need for the use of any weapon, and hence was not justified in the resort to the shooting in order to defend himself.

[2] 2. Was the jury misled by the verbal instruction given by the court into believing that they were instructed that they could not find the accused not guilty of any offense, and that they must find him guilty of some offense?

The question must be answered in the negative.

We think that it is apparent from a mere reading of the verbal instruction in question that the court was thereby merely calling the attention of the jury to the wide range of punishment permitted by the law in the event the jury found the accused guilty of any of the different degrees of the offense charged in the indictment; thus merely recalling to their minds the charge which they had already received from the clerk on that subject, and was not, at that time, attempting to instruct the jury on the subject of whether they should, or should not, find the accused guilty of any offense whatever. The latter subject was fully covered by the written instructions which the court had given the jury at the conclusion of the introduction of the testimony. And we have no idea that the jury were misled, by what the court said in the verbal instruction, into thinking that the court intended thereby to modify or change in any respect the written instructions already given them; nor, indeed, that the accused or his counsel so thought, at the time such verbal instruction was given; else they would surely have asked the court to add something to such verbal instruction to guard against such an interpretation of it. This was not done. No position was taken before the trial court before verdict indicating that the accused feared that the jury would be misled by the verbal instruction, as it is now, after verdict and for the first time upon the appeal to this court, contended that they were. This very strongly indicates to our minds that it was fully understood at the time by

all concerned just what the trial court meant as afore-said by the verbal instruction; and we see no reason to think that the jury ever had any doubt as to such being the correct meaning of it.

The case will be affirmed.

*Affirmed.*

BURKS and CAMPBELL, J. J., expressed some doubt as to the correctness of the answer of the court to the second question propounded in its opinion. Under the circumstances detailed, they thought that the jury may have regarded the oral instruction as tantamount to the expression of the opinion that the accused was guilty of some offense, and that in view of the latitude of punish-ment allowed they ought to be able to agree on what that punishment should be. The accused excepted to the instruction when given, which was all the law requires.